ALEXANDER B. TRUEBLOOD (Bar No. 150897)
TRUEBLOOD LAW FIRM
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone:  (310) 943-0298
Facsimile: (310) 943-2255

Attorneys for Plaintiff
LAURA BALLEGEER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BALLEGEER,<br><br>              Plaintiff,<br><br>       vs.<br><br>MOTION REPOSSESSORS, INC.,<br>WELLS FARGO BANK, N.A., and<br>DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.:  2:15-cv-07707-JAK-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANT WELLS FARGO BANK, N.A.**<br><br>Date: March 21, 2015<br>Time: 8:30 a.m.<br>Courtroom;  750<br><br>Hon. John A. Kronstadt |

# I.  INTRODUCTION

This is an action for violations of the Fair Debt Collection Practices Act, California's Rosenthal Fair Debt Collection Practices Act, and conversion, brought by plaintiff Laura Ballegeer, against an auto lender, defendant Wells Fargo Bank, N.A., and its repossession agency, Motion Repossessors, Inc.

Plaintiff's father bought a vehicle on credit, financed by Wells Fargo. Plaintiff's father died, and plaintiff was his heir. Upon the death of plaintiff's father, defendant Wells Fargo promised her it would not repossess the vehicle, pending probate administration. This was a lie, for Wells Fargo secretly ordered the repossession anyway.  Wells Fargo's agent defendant Motion Repossessors then broke into plaintiff's secured property and stole the vehicle by committing a breach of the peace.  While at Motion Repossessors to recover her items in the vehicle, plaintiff refused to sign an illegal release of all her legal claims. Motion Repossessors then had its security guard toss plaintiff and her personal possessions out into the street, telling her she was trespassing and would be arrested. Wells Fargo then lied to plaintiff again, and told her she did not have a legal right to reinstate the contract, when in fact she did.  Plaintiff had to hire an attorney, rent a car for months, and incur other expenses until she finally got her car back from Wells Fargo.

Wells Fargo's motion to dismiss attacks plaintiff's standing under the Rosenthal Act, but oddly, fails to cite to the standing provisions of the Act. Nor is the motion supported by a single citation to case law.  Had Wells Fargo read the relevant standing provisions, it would have discovered that the Rosenthal Act expressly grants standing to "any person" subjected to the wrongful conduct, not just the "debtor."  Moreover, the definition of "debtor" in the Rosenthal Act includes anyone who is *alleged* to have property due or owing to the creditor, and plaintiff clearly falls under that definition.  This is not an issue of first impression in the Ninth Circuit, and the law is settled in plaintiff's favor.

Wells Fargo also makes the unsupported assertion that plaintiff had no right or interest in the vehicle, under her conversion claim, supposedly because the probate administration was not yet completed at the time of the wrongful conduct. In fact, the Probate Code expressly states that title passes to an heir immediately upon the decedent's death. Thus, plaintiff had not only a right to possession, but actual legal title to the vehicle, subject to probate administration.  Defendant's motion to dismiss should be denied.

## II.  SUMMARY OF FACTS AND CLAIMS

 On December 14, 2014, plaintiff's father Ronald Ballegeer purchased a 2011 Chevrolet Traverse, at a car dealership.  He bought the vehicle on credit, and Wells Fargo Bank, N.A financed the transaction by taking assignment of the retail installment sales contract.  Complaint, ¶ 1.  Unfortunately, Ronald Ballegeer passed away intestate in early 2015, and by operation of law, his daughter Laura Ballegeer and her brother became his legal heirs.  Complaint, ¶ 1.  Plaintiff Laura Ballegeer has now completed the probate process, and the probate court has issued an order confirming her as the legal heir to Ronald Ballegeer, along with her brother.  See Request for Judicial Notice.

Plaintiff was handling her father's affairs, and contacted Wells Fargo to inform it of the death of her father.  The account was current, and plaintiff told Wells Fargo that she intended to pay off the loan entirely as her father's heir, and take formal title to the vehicle, as soon as the probate was completed. Complaint, ¶ 1. Wells Fargo's representative promised plaintiff it would not repossess the vehicle while plaintiff was going through the probate process. Complaint, ¶ 1. However, without informing plaintiff of its intentions, Wells Fargo shortly thereafter hired defendant Motion Repossessors to repossess plaintiff's vehicle.

Defendant Motion Repossessors repossessed plaintiff's vehicle by breaking into plaintiff's secured and gated residential apartment complex, without permission. Complaint, ¶ 2. Accordingly, Motion Repossessors breached the peace

in violation of Commercial Code § 9609 and the Collateral Recovery Act, Bus. &
Prof. Code § 7508.2(d).

Defendant Motion Repossessors also seized plaintiff's personal possessions
inside the vehicle. Under the Collateral Recovery Act, it had a duty to return those
items to plaintiff.  Plaintiff went to Motion Repossessors to get her personal
possessions. Before being permitted to inspect and verify her personal possessions,
Motion Repossessors demanded that plaintiff sign a general release of all legal
claims she had against Motion Repossessors and the lienholder, Wells Fargo.
Complaint, ¶ 3. Plaintiff refused, but ultimately was forced to sign when defendants
continued to refuse her access to her possessions. The Rosenthal Fair Debt
Collection Practices Act prohibits such unconscionable legal waivers as a violation
of the Act.  Civil Code § 1788.33; Civil Code § 1788.17.

Angered by plaintiff's reluctance to sign its illegal release, Motion
Repossessors had its security guard take plaintiff to the gate, who then dumped
plaintiff's possessions in the street, and forced plaintiff to go through them there to
humiliate her, stating that she was trespassing and would be arrested.  Complaint, ¶
4.

Wells Fargo continued making false statements to plaintiff after the
repossession. Plaintiff called Wells Fargo and requested to reinstate her contract, as
was her right under the Rees-Levering Act, Civil Code § 2983.2(a). Wells Fargo's
representative falsely told plaintiff that she could not reinstate the contract.
Complaint, ¶ 5. Meanwhile, Wells Fargo sent plaintiff a formal written notice
which did grant plaintiff the right to reinstate, which it apparently hoped plaintiff
would not read. Complaint, ¶ 5.

Plaintiff hired a probate attorney, and ultimately obtained the proper letters
of administration appointing her as personal representative of her father's estate.
See Request for Judicial Notice. She paid off the Wells Fargo loan and obtained
title to the car. Plaintiff then brought this action to recover for the wrongful

3

repossession, having incurred months of rental car charges, repossession fees, and attorneys fees as a result of Wells Fargo's repossession and misrepresentations.

As to defendant Wells Fargo, plaintiff asserts the following legal claims in the complaint.

• Claim 1. Wells Fargo's false promise not to repossess the vehicle was a violation of Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692e) which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Complaint, ¶¶ 1, 28.

• Claim 2. Wells Fargo's false oral statement that plaintiff had no right to reinstate the contract after repossession, while it was disingenuously granting that right in writing, also violated Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692e), as a deceptive statement. Complaint, ¶¶ 5, 28.

• Claim 3. Wells Fargo is vicariously liable for the abuse of its agent Motion Repossessors, who manhandled plaintiff out of the office, and threw her possessions on the street to humiliate her.  This violated Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692d), which provides "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Complaint, ¶¶ 4, 27.

• Claim 4. Wells Fargo is vicariously liable for the false statements of its agent Motion Repossessors, who told that plaintiff she was trespassing, and made the false threat that plaintiff would be arrested.  These statements violated Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692e) which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  They also violated Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692d) because they were abusive. Complaint, ¶¶ 4, 25, 28.

• Claim 5. Wells Fargo is vicariously liable for the unconscionable conduct of its agent Motion Repossessors, who forced plaintiff to sign an illegal release of

1  her rights against both Wells Fargo and Motion Repossessors, in violation of Civil

2  Code § 1788.33. That section provides "Any waiver of the provisions of this title is

3  contrary to public policy, and is void and unenforceable." This conduct also

4  violated Civil Code § 1788.17 (incorporating by reference 15 U.S.C. § 1692f),

5  which states: "A debt collector may not use unfair or unconscionable means to

6  collect or attempt to collect any debt." Complaint, ¶¶ 3, 26, 29.

III.  ARGUMENT

A.     <u>The Rosenthal Act Grants Standing To "Any Person," Not Just The "Debtor"</u>

9          In a motion to dismiss for alleged lack of standing, defendant Wells Fargo

10  has failed to even discuss the Rosenthal Act's standing provisions, or cite to a

11  single case in support of its argument. The California Legislature expressly

12  expanded standing under the Act to include "any person" subjected to the

13  prohibited practices, in the extensive 1999 amendments.  The Legislature

14  accomplished this by passing Civil Code § 1788.17, which provides:

15  "Notwithstanding any other provision of this title, every debt collector collecting or

16  attempting to collect a consumer debt shall comply with the provisions of Sections

17  1692b to 1692j, inclusive, of, **and shall be subject to the remedies in Section**

18  **1692k of, Title 15 of the United States Code**." Civil Code § 1788.17 (emphasis

19  added).  In turn, 15 U.S.C. § 1692k provides that "Except as otherwise provided by

20  this section, any debt collector who fails to comply with any provision of this

21  subchapter **with respect to any person** is liable to **such person**  . . ."  15 U.S.C. §

22  1692k.

23          By using the phrase "Notwithstanding any other provision of this title" in

24  Civil Code § 1788.17, the Legislature's 1999 amendments effectively abrogated

25  Civil Code § 1788.30(a), the old provision under which only the debtor had

26  standing to sue.  <u>Gonzales v. Arrow Fin. Services, LLC</u>, 660 F.3d 1055, 1065 (9th

27  Cir. 2011)("By use of the phrase 'notwithstanding any other provision,' the 1999

28  amendment unambiguously supercedes any provision of the Rosenthal Act

5

inconsistent with the referenced provisions of the FDCPA").  Thus, after the 1999 amendments, by operation of Civil Code § 1788.17, "any person" subject to an illegal practice may sue, pursuant to 15 U.S.C. § 1692k.

The various prohibitions of the FDCPA are incorporated into the Rosenthal Act by Civil Code § 1788.17, and they are not limited only to "debtors." 15 U.S.C. § 1692e generally prohibits "**any** false, deceptive, or misleading representation or means in connection with the collection of any debt," regardless to whom the misrepresentation is made.  15 U.S.C. § 1692d provides that "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse **any person** in connection with the collection of a debt." (emphasis added). 15 U.S.C. § 1692f states, without limiting to whom the conduct must be directed: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Consistent with the plain text of the FDCPA, and the Ninth Circuit's Gonzales decision, supra, the federal courts have consistently found that non-debtors have standing to sue under the Rosenthal Act, by operation of Civil Code § 1788.17. Crockett v. Rash Curtis & Associates, 929 F. Supp.2d 1030, 1032-1033 (N.D. Cal. 2013)(non-debtor harassed by telephone calls had standing under FDCPA and Rosenthal); Shannon v. Windsor Equity Group, ___ F.3d ___ (S.D. Cal. 2014)("[I]f an individual has standing to assert a claim under Sections 1692b to 1692j under the FDCPA, that individual must also having standing to assert a claim under the Rosenthal Act"); Heathman v. Portfolio Recovery Associates, ___ F.3d ___ (S.D. Cal. 2013)("the most egregious misconduct targeted by the FDCPA – [is] suing non-debtors over nonexistent debts"); Rawlinson v. Law Office of William M. Rudow, LLC, ___ F.3d __ (4th Cir. 2011,unpublished) (holding that consumer in alleged possession of vehicle, though not the debtor, could sue for FDCPA violations because "any aggrieved party, not just a debtor, may bring an action under the statute").

It should also be noted that plaintiff is not suing Wells Fargo under any of the Rosenthal Act's provisions which limit their applicability to the "debtor."[1]  As explained under the Summary of Facts and Claims section above, plaintiff's claims against Wells Fargo are all under Civil Code § 1788.17. Nothing in Civil Code § 1788.17 requires the *victim* to be the same person as the *debtor*. That section provides "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect **a consumer debt** shall comply with the provisions of Sections 1692b to 1692j of [the FDCPA]." A "consumer debt" is defined as money or property due or owing, or allegedly due or owing, by *any* "natural person" to another person. Civil Code § 1788.2(e) and (f). Thus, the definition of "consumer debt" does <u>not</u> require that the person owing the debt be the same person who is subject to the unlawful practice. As long as the debt collector is collecting on the debt *of any natural person*, and that debt was for goods on credit and bought for personal or family purposes, the Act applies.

In summary, the FDCPA affords standing to any person subject to the illegal conduct (15 U.S.C. § 1692k), and the Rosenthal Act incorporates these standing provisions of the FDCPA as state law, after the 1999 amendments. Civil Code § 1788.17.  Because the Rosenthal Act applies to protect both debtors and non-debtors, the technical issue of whether plaintiff was a "debtor" under probate law or under the definitions in the Rosenthal Act, is simply irrelevant to standing. As a consumer protection law, the Act must be interpreted liberally to accomplish its purposes.  See <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033-34 (9th Cir. 2010); <u>Pitney Bowes, Inc. v. State of California</u>, 108 Cal.App.3d 307, 324 (1980).

---

[1] Certain prohibitions in the Rosenthal Act apply only to conduct directed toward the debtor.  See e.g. Civil Code §§ 1788.10(d), 1788.11(e), 1788.12(d), 1788.13(a), 1788.14(a).  However, plaintiff is not suing under any of these provisions. The other prohibitions in the Act are either expressly applicable to "any person," or apply to prohibit the conduct generally, without specifying the victim.  See e.g. Civil Code § 1788.10(a),

B.     In Any Event, Plaintiff *Is* A "Debtor" Under The Rosenthal Act's Broad
Definition Of That Term

The Rosenthal Act defines a debtor as "a natural person from whom a debt
collector seeks to collect a consumer debt which is due and owing or *alleged* to be
due and owing from such person." Cal. Civ. Code § 1788.2(h). (The term "debt"
means "money, *property* or their equivalent, due or owing or *alleged* to be due or
owing from a natural person by reason of a consumer credit transaction.").

Plaintiff falls under this definition of "debtor," despite not having signed the
loan papers. Wells Fargo *alleged* that plaintiff had "property" due and owing to
Wells Fargo by reason of a consumer credit transaction, i.e. the vehicle itself.  The
inclusion of the words "alleged to be due and owing" expands the law to cover
consumers who are not legally responsible for the debt, but are subject to the illegal
practice. Dunham v. Portfolio Recovery Associates, LLC, 663 F. 3d 997 (8th Cir.
2011)(finding under FDCPA that the phrase "any natural person obligated or
*allegedly* obligated to pay any debt" includes non-debtors who were subject to the
wrongful conduct); Rawlinson v. Law Office of William M. Rudow, LLC, ___
F.3d __ (4th Cir. 2011,unpublished) (holding that consumer in possession of
vehicle, though not the debtor, could sue for FDCPA violations because "any
aggrieved party, not just a debtor, may bring an action under the statute").

C.     Plaintiff Acquired Title To The Vehicle Immediately Upon Her Father's
Death, Under Probate Law

Wells Fargo assumes, without any authority, that plaintiff had "no interest"
in the vehicle, until the probate administration was completed.  In fact plaintiff was
a legal owner immediately upon her father's death, by operation of law. Probate
Code § 7000 provides that "Subject to Section 7001, title to a decedent's property
passes on the decedent's death to the person to whom it is devised in the decedent's
last will or, in the absence of such a devise, to the decedent's heirs as prescribed in

1788.10(c), 1788.10(e), 1788.11(a)-(d), 1788.12(b) and (c), 1788.13(b),

the laws governing intestate succession. This means that plaintiff acquired title immediately upon the death of her father, subject only to confirmation in the probate proceeding.  <u>Olson v. Toy</u>, 46 Cal.App.4th 818, 825 (1996)(" . . . [A]n estate does not take title to the decedent's property. When a person dies, title to his or her property vests in the heirs or devisees, subject to administration"); <u>Mac v. Bank of America</u>, 76 Cal.App.4th 562, 566 (1999) (immediately upon death of decedent, the heir became the legal "account holder" of the deceased's bank account at Wells Fargo, and therefore bank's mailing of monthly statements to decedent could not trigger statute of limitations on forged checks).

D.    <u>Plaintiff Has Properly Pleaded Ownership Or Right To Possession Under Her Conversion Claim</u>

The elements of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. <u>Burlesci v. Petersen</u>, 68 Cal. App.4th 1062, 1065 (1998).  Wells Fargo challenges only the first element on this motion.

As explained in the preceding section, plaintiff held legal title to the vehicle at the time of the repossession, and therefore has satisfied the element of "ownership." Alternatively, plaintiff certainly had a *right* to possession of the property which she had just inherited.  Who else would have the right to possession, if not the heirs?  By promising plaintiff not to repossess the vehicle, Wells Fargo itself acknowledged plaintiff's right of possession of the property. Complaint, ¶ 1. A bank commits conversion when by its dealings, negligence, or statements, it leads the customer to believe it will not repossess a vehicle, but then does so. <u>Varela v. Wells Fargo Bank</u>, 15 Cal.App.3d 741, 747, 749 (1971)("The repossession must have struck her out of a clear sky").

(d), (e), (g)-(l), 1788.15, 1788.16.    9

1

### III.  CONCLUSION

2

For all of the foregoing reasons, plaintiff respectfully requests that

3

defendant's motion to dismiss be denied.  In the alternative, plaintiff requests leave

4

to amend.

5

6

Dated: December 21, 2015                    Respectfully Submitted,

7

TRUEBLOOD LAW FIRM

8

9

10

By:  _____/S/_____
                Alexander B. Trueblood

11

Attorneys for Plaintiff
LAURA BALLEGEER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28